UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HB FRESH INC.,

                      Plaintiff,

v.

DAHUA WHOLESALE INC. and LINFEI PAN,

                      Defendants.

**MEMORANDUM AND ORDER**

18-CV-5897 (LDH) (RER)

---

L‍A‍SHANN D‍E‍ARCY HALL, United States District Judge:

Plaintiff HB Fresh Inc. brings the instant action against Defendants Dahua Wholesale Inc. ("Dahua") and Linfei Pan asserting claims for failure to pay trust funds, failure to make prompt payment, and unlawful dissipation of trust assets pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq*. and state law claims for breach of contract and failure to pay for goods sold.[1] Plaintiff moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims.

## UNDISPUTED FACTS[2]

Plaintiff is a wholesaler of produce sold in interstate commerce and is licensed under PACA. (Defs.' Counterstatement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' Counter 56.1") ¶ 1, ECF No. 33.) Dahua is not licensed under PACA. (Jan. 10, 2020 Decl. Linfei Pan ("Pan Decl.") ¶ 6, ECF No. 34.) Plaintiff maintains, and Defendants dispute, that

---

[1] Plaintiff's claims for failure to pay for goods sold and breach of contract are asserted against Dahua. (Compl. ¶¶ 20–28, ECF No. 1). The claim for unlawful dissipation of trust assets by a corporate official is asserted against Pan. (*Id.* ¶¶ 29–33.) The claims for failure to pay trust funds, failure to make prompt payment, and prejudgment interest and attorney's fees are asserted against both defendants. (*Id.* ¶¶ 12–19, 34–36).

[2] Unless otherwise indicated, the undisputed facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1. To the extent any fact is disputed, it is so indicated. Facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

1

between June 2, 2018, and June 26, 2018, Plaintiff sold and shipped mangoes to Dahua, valued collectively at $100,404.50.[3] (*See* Pl.'s Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Pl.'s 56.1") ¶ 3, ECF No. 27; Defs.' Counter 56.1 ¶ 3.) According to Plaintiff, it shipped these mangoes from Mexico to New York. (*See* Dec. 29, 2019 Decl. Eric Hurtado ("Hurtado Decl.") ¶ 13, ECF No. 28; *id*., Ex. D, ECF No. 27-4.) Defendants do not dispute that they received shipments of mangoes from Plaintiff. (*See* Defs.' Counter 56.1 ¶¶ 4–5; Jan. 10, 2020 Decl. Mandy Shi ("Shi Decl.") ¶ 3, ECF No. 35.) Rather, according to Defendants, they accepted 4,109 of the 4,326 cases of mangoes shipped on June 2; 2,351 of the 4,200 cases of mangoes shipped on June 7; 3,061 of the 4,196 cases of mangoes shipped on June 19; and 3,753 of the 3,990 cases of mangoes shipped on June 26. (*See* Defs.' Counter 56.1 ¶ 6; Hurtado Decl., Ex. E at 3, ECF No. 27-5.) Defendants maintain, however, that they did not order the mangoes but instead accepted them pursuant to a consignment agreement with Jian Thomas Qi, a buying agent for Wah Teng Produce, a nonparty to this action. (*See* Defs.' Counter 56.1 ¶ 3; Shi Decl., ¶¶ 7–8.)

According to Plaintiff, on the date of each mango shipment, it mailed Defendants an invoice. (*See* Pl.'s 56.1 ¶ 3; Defs.' Counter 56.1 ¶ 3; Hurtado Decl. ¶ 7, Ex. D, ECF No. 27-4.) The invoices indicate that Plaintiff shipped: $26,135.00 worth of mangoes on June 2, 2018; $25,213.50 worth of mangoes on June 7, 2018; $23,955.00 worth of mangoes on June 19, 2018; and $25,101.00 worth of mangoes on June 26, 2018. (*See id*.) Defendants maintain that they did not receive any invoices from Plaintiff. (Defs.' Counter 56.1 ¶ 11.) Nonetheless, as payment for the mangoes, Pan, Dahua's corporate officer, made three wire transfers to Plaintiff totaling

---

[3] The Court notes that in its 56.1 statement, Plaintiff identifies the total value of the produce as $100,314.50. (Pl.'s 56.1 ¶ 3.) However, the financial statement cited thereto identifies the total value of the produce as $100,404.50. (*See* Hurtado Decl., Ex. D at HB001.) Accordingly, the Court relies on the evidence in the record and determines that the correct value is $100,404.50.

$50,000—a June 20, 2018 payment in the amount of $12,000.00; a July 19, 2018 payment in the amount of $19,000.00; and an August 8, 2018 payment in the amount of $19,000.00.  (Hurtado Decl. Ex. H, ECF No. 27-8.)

Pan was in a position of control over Plaintiff's PACA trust assets held by Dahua.  (Pl.'s 56.1 ¶ 16; Defs.' Counter 56.1 ¶ 16.)  Pan's duties included:  (1) exercising check-signing authority on banking accounts belonging to Dahua; (2) authorizing the electronic transfer of funds from banking accounts belonging to Dahua; (3) exercising management duties over Dahua employees; and (4) making business decisions on behalf of Dahua.  (Pl.'s 56.1 ¶ 17; Defs.' Counter 56.1 ¶ 17.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the [movant is] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Once the movant meets its initial burden, the non-movants may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, *Anderson*, 477 U.S. at 255, but the non-movants must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

3

## DISCUSSION[4]

**I.  PACA**

PACA was enacted in 1930 to regulate the interstate sale of perishable agricultural commodities, namely fruits and vegetables.  *See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.,* 67 F.3d 1063, 1066 (2d Cir. 1995) (describing origins of PACA).  Under PACA's trust provisions, produce sellers become the beneficiaries of a constructive, statutory trust that consists of produce-related assets and lasts until the seller receives payment.  7 U.S.C. § 499e(c)(2).  The PACA trustee, (the buyer), "is charged with a duty to ensure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (internal quotations and citation omitted).  The trust is formed "[w]hen a seller, supplier or agent . . . transfers ownership, possession, or control of goods to a commission merchant, dealer, or broker, it automatically becomes eligible to participate in the trust."  7 C.F.R. § 46.46(c)(1).  Sellers who preserve their rights under the trust remain beneficiaries until they are paid in full.  *Id.*

To prevail on a PACA trust claim, a plaintiff must demonstrate that:  "(1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser

---

[4] In direct contravention of Local Civil Rule 7.1, Defendants did not oppose Plaintiff's motion for summary judgment with a memorandum of law.  *See* Local. Civ. R. 7.1 ("Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law. . . .")  Instead, Defendants opposed with declarations from Pan, Mandy Shi—Dahua's accountant—and Victor Tsai—Dahua's counsel.  (*See* Pan Decl.; Shi Decl.; Jan. 10, 2020 Decl. Victor Tsai ("Tsai Decl."), ECF No. 36.)  That said, "[a] non-movant's failure to file papers in opposition to a motion for summary judgment is not—standing alone—an appropriate basis upon which to grant the movant's motion."  *Harris Corp. v. McBride & Assocs., Inc.*, 01-CV-0106E(F), 2002 WL 1677695, at *3, n.12 (W.D.N.Y. July 19, 2002).

of its intention to do so." *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 477 (E.D.N.Y. 2012) (quoting *Taylor & Fulton Packing, LLC, v. Marco Int'l Foods, LLC*, 09-CV-2614, 2011 WL 6329194, at *5 (E.D.N.Y. Dec. 16, 2011)).

The first four elements are easily established. Mangoes indisputably constitute perishable agricultural commodities. *See* 7 U.S.C. § 499a(b)(4)(A) (defining "perishable agricultural commodities" as "[f]resh fruits and fresh vegetables of every kind and character," whether or not frozen or packed in ice). Plaintiff sold mangoes into foreign commerce by shipping them from Mexico to New York. (*See* Hurtado Decl. ¶ 13; *id.*, Ex. D.) Plaintiff was not paid in full for the mangoes, which were invoiced for $100,404.50, (Hurtado Decl., Ex. D at HB001), but for which Defendants paid only $50,000, (*Id.*; Ex. H, ECF No. 27-8). Defendants maintain that the mangoes were not valued at $100,404.50 but offer no evidence to support that contention or any evidence that the payments totaling $50,000 fully satisfied their obligations to Plaintiff. (*See* Defs.' Counter 56.1 ¶ 3.)

Next, contrary to Defendants' contention, even though Dahua is not licensed under PACA, it is a dealer under PACA. A company is considered a dealer under PACA if it is "engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6). "Wholesale or jobbing quantities" is defined as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). As declared by Plaintiff's CEO and President, Eric Hurtado, "on multiple occasions, Defendants purchased more than 2,000 pounds of produce from Plaintiff in a single day." (Hurtado Decl. ¶ 12.) This contention is supported by three invoices showing that on each June 7; June 19; and June 26, Plaintiff shipped 40,000 pounds of mangoes

5

to Defendants.  (*Id*., Ex. D.)  Plainly, any one of these three shipments is sufficient to qualify Dahua as a PACA dealer.  Defendants seek to avoid this finding by maintaining that they never ordered the mangoes.  (Defs.' Counter 56.1 ¶ 3.)  Even if true, Defendants do not dispute that they accepted 4,109 cases of mangoes on June 2; 2,351 cases of mangoes on June 7; 3,061 cases of mangoes on June 19; and 3,753 cases of mangoes on June 26.  (*See* Defs.' Counter 56.1 ¶ 6; Hurtado Decl., Ex. E Nos. 2-5, ECF No. 27-5.)  For these mangoes, Pan wired Plaintiff, on behalf of Dahua, $50,000.  (*See* Hurtado Decl., Ex. H.)  Put another way, Dahua purchased at least 2,000 pounds of mangoes from Plaintiff on a single day, rendering it a dealer under PACA.

The question of whether Plaintiff properly preserved its rights presents a much closer call.  To preserve trust rights under PACA, a produce supplier "may use ordinary and usual billing or invoice statements to provide notice of [its] intent to preserve the trust."  7 U.S.C. § 499e(c)(4).  The face of the billing or invoice statements should include the following statutory trust language:  "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c))."  *Id*.  Relevant here, the Second Circuit has explained that a supplier "will not be entitled to PACA protection for any non-payment claims unless it perfects its claims within 40 days after the payment was due by sending a notice of intent to preserve PACA trust benefits to . . . the particular commodities broker alleged to have violated PACA."  *D.M. Rothman & Co. v. Korea Commercial Bank of New York*, 411 F.3d 90, 96 (2d Cir. 2005).

Plaintiff argues that it timely preserved its rights by mailing to Defendants an invoice for each shipment that included the statutory trust language.  (*See* Pl.'s Mem. L. Supp. Mot. Summ. J. ("Pl.'s Mem.") 8, ECF No. 30.)  As evidence of the mailing, President Hurtado declared that he deposited each invoice into a U.S. Postal Service depository on the same day that the mangoes

6

were shipped, and that none of the invoices were returned as undeliverable. (Hurtado Decl. ¶¶ 10–12.) Relying on the Second Circuit's decision in *D.M. Rothman & Co.*, Plaintiff maintains that these facts sufficiently establish its preservation of rights. (*See* Pl.'s Mem. 9.) Not so. In *D.M. Rothman & Co.*, the Second Circuit affirmed the district court's determination, following a bench trial, that the trustee provided timely notice to the defendant of its preservation of rights. 411 F.3d at 98. The district court credited the testimony of employees from each of the fourteen plaintiffs who testified that it was customary in their offices to mail notices more or less simultaneously to the purchaser and the Department of Agriculture. *Id*. Significantly, that testimony was corroborated by certified copies of the notices mailed to Agriculture. *Id*. 96–97. Moreover, there was no suggestion that the invoices were never received. *See id*. at 96–98.

Unlike in *D.M. Rothman & Co.*, this Court, on a motion for summary judgment, cannot make a credibility determination that might allow it to resolve the material dispute as to whether the invoices were timely mailed. Moreover, unlike in *D.M. Rothman & Co.*, Plaintiff has not proffered any documentary evidence, such as certified mail receipts, to corroborate President Hurtado's assertions. While Hurtado set out in detail how and when the invoices were mailed, he failed to indicate, as the witnesses did in *D.M. Rothman & Co.*, whether the mailings comported with the company's "standard office procedures." *Id.* at 96. And, of course, Defendants have denied that they received the invoices. (Defs.' Counter 56.1 ¶ 11). Put simply, this case is distinguishable. Indeed, each of the cases cited by Plaintiff involved testimony and or documentary evidence absent here. *See Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859 (S.D.N.Y. 1995) (granting summary judgment based on testimony from person who mailed invoices and certified mail receipts that mailing procedures followed the regular course of business, holding that this evidence sufficiently demonstrated that defendant presumptively received the invoices);

7

*In re East Coast Brokers and Packers, Inc.*, 961 F.2d 1543, 1545–46 (11th Cir. 1992) (determining that presumption of mailing applied based on testimony of trustee representative as to the standard office procedure for preparing and mailing trust notices to customers). Conversely, here, there remains a question of material fact as to whether the necessary notice was given, precluding summary judgment on this Plaintiff's PACA claim against Dahua.[5]

## II. Individual Liability Under PACA

Corporate officials are not immune from individual liability under PACA's trust provision. That is, "[a]n individual who is in a position to oversee the proper application of the PACA trust assets, and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007). Failure to turn over the trust assets to produce suppliers when payment is due constitutes a breach of the fiduciary duty to make the trust assets "freely available" to the PACA trust beneficiary. *Id*. at 706 (quoting 7 C.F.R. § 46.46(d)(1)).

Pan was in a position of control over Plaintiff's PACA trust assets held by Dahua. (Defs.' Counter 56.1 ¶ 16.) Pan's duties included: (1) exercising check-signing authority on banking accounts belonging to Dahua; (2) authorizing the electronic transfer of funds from banking accounts belonging to Dahua; (3) exercising management duties over Dahua employees; and (4) making business decisions on behalf of Dahua. (*Id*. ¶ 17.) And, as set out above, Defendants have failed to make full payment to Plaintiff for the mangoes supplied to them. For these reasons, Pan is subject to liability for the trust. However, while the trust is automatically created under the statute, the unpaid seller is not entitled to recovery unless it "give[s] written

---

[5] Plaintiff argues that it is entitled to attorney's fees and prejudgment interest. (Pl.'s Mem. 12.) Because the Court cannot conclude as a matter of law that Plaintiff is entitled to recovery against Dahua on its PACA trust claim, it does not reach the question of attorney's fees or prejudgment interest. Accordingly, Plaintiff is not entitled to summary judgment on its sixth cause of action.

8

notice of intent to preserve the benefits of the trust to the commission merchant." 7 U.S.C. § 499e(c)(3). Because the Court is unable to determine that Plaintiff gave proper notice entitling it to recovery under the trust, it cannot assess Pan's liability on this motion.

### III.  Breach of Contract

To state a claim for breach of contract, a plaintiff must establish "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Plaintiff argues that it has adduced evidence sufficient to satisfy each element, thereby warranting judgment as a matter of law. (Pl.'s Mem. 12.) The Court disagrees.

"A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract . . . ." N.Y. U.C.C. § 2–204(1). That said, a contract for the sale of goods for the price of $500 or more is "not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." N.Y. U.C.C. § 2–201. Here, the four shipments of mangoes were invoiced for $26,135.00; $25,213.50; $23,955.00; and $25,101.00. (*See* Hurtado Decl. Ex. D.) As such, any contract in connection with the sale of the mangoes must have been memorialized in a writing signed by the party against whom enforcement is sought. Plaintiff has adduced none. Instead, relying on a district court decision, *Top Banana, L.L.C., v. Dom's Wholesale & Retail Ctr., Inc.*, Plaintiff argues that, pursuant to N.Y. U.C.C. § 2–201, the four invoices it mailed to Defendants constitute an agreement between the parties whereby Plaintiff would deliver produce to Dahua. (Pl.'s Mem. 12.) Plaintiff's reliance on *Top Banana* is misplaced. In *Top Banana*, the court determined that the terms set out in the invoices could be incorporated by reference into the

9

parties' agreement, because the terms in the invoices did not materially alter the agreement. *Top Banana, L.L.C., v. Dom's Wholesale & Retail Ctr., Inc.*, 04-CV- 2666 (GBD), 2005 WL 1529736 at *5 (S.D.N.Y. June 28, 2005). Critically, in *Top Banana*, the parties had an existing enforceable contract. *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, 04-CV-2666 (GBD) (AJP), 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005) (recognizing that "[t]he facts are undisputed that the transactions between the [plaintiffs and defendants] were oral contracts that were followed up by the issuance of invoices"). Ultimately, the court found that the invoices did not materially alter the contract and therefore could be incorporated into it. *Top Banana, LL.C.*, 2005 WL 1529736 at *6. There is no existing contract here. In the absence of a written agreement, Plaintiff is not entitled to summary judgment on its fourth cause of action.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      November 23, 2020  LaSHANN DeARCY HALL
                                   United States District Judge

---

[6] Plaintiff maintains that it has established its claim for failure to pay for goods sold. (Pl.'s Mot. 16) ("Based on the foregoing, Plaintiff is entitled to judgment against Defendants on its third and fourth causes of action.") Plaintiff does not actually brief this claim. Accordingly, Plaintiff is not entitled to summary judgment on its third cause of action.